**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION**

| | |
|---|---|
| DANIELLE SCHULTZ § <br> Plaintiff, § <br> § <br> vs. § <br> § <br> HOMEBRIDGE FINANCIAL § <br> SERVICES INC., EQUIFAX § <br> INFORMATION SERVICES, LLC, § <br> TRANS UNION, LLC, and EXPERIAN § <br> INFORMATION SOLUTIONS, INC. § <br> Defendants. § | CIVIL ACTION NO. 1:21-cv-863 <br><br> **COMPLAINT** <br> Jury Trial Demanded |

**NATURE OF ACTION**

1. This is an action for damages brought by Danielle Schultz ("Ms. Schultz"), an individual, pursuant to the Fair Credit Reporting Act ("FCRA"), 15 U.S.C. § 1681 *et seq.*, and the Real Estate Settlement Procedures Act ("RESPA"), 12 U.S.C. § 2601 *et seq.*, against HomeBridge Financial Services Inc. ("HomeBridge"), Equifax Information Services, LLC ("Equifax"), Trans Union, LLC ("Trans Union"), and Experian Information Solutions, Inc. ("Experian") (collectively "Defendants").

**JURISDICTION AND VENUE**

2. Jurisdiction of this Court arises under 15 U.S.C. § 1681p and 28 U.S.C. § 1331.

3. Venue is proper before this Court pursuant to 28 U.S.C. § 1391(b), where the acts and transactions giving rise to Ms. Schultz's action occurred in this district, where Ms. Schultz resides in this district, and where Defendants transact business in this district.

**PARTIES**

4. Ms. Schultz is a natural person residing in the State of Texas, County of Travis, and City of Austin.

1

5. Ms. Schultz is a "consumer" as defined by 15 U.S.C. § 1681a(c).

6. Ms. Schultz's loan is a "federally related mortgage loan" as defined by 12 U.S.C. § 2602(1).

7. HomeBridge is a mortgage lending firm doing business in the states of Arizona and Texas.

8. HomeBridge uses a means or facility of interstate commerce for the purpose of furnishing information to consumer reporting agencies.

9. HomeBridge is a "person" as defined by 15 U.S.C. § 1681a(b).

10. HomeBridge is a "servicer" as defined by 12 U.S.C. § 2605(i).

11. Equifax is a for-profit limited liability company engaged in the business of assembling or evaluating consumer credit information or other information on consumers for the purpose of reporting or furnishing consumer reports to third parties.

12. Equifax uses a means or facility of interstate commerce for the purpose of preparing or furnishing consumer reports.

13. Equifax is a "consumer reporting agency" as defined by 15 U.S.C. § 1681a(f).

14. Trans Union is a for-profit limited liability company engaged in the business of assembling or evaluating consumer credit information or other information on consumers for the purpose of reporting or furnishing consumer reports to third parties.

15. Trans Union uses a means or facility of interstate commerce for the purpose of preparing or furnishing consumer reports.

16. Trans Union is a "consumer reporting agency" as defined by 15 U.S.C. § 1681a(f).

17. Experian is a for-profit corporation company engaged in the business of assembling or evaluating consumer credit information or other information on consumers for the purpose of reporting or furnishing consumer reports to third parties.

18. Experian uses a means or facility of interstate commerce for the purpose of preparing or furnishing consumer reports.

19. Experian is a "consumer reporting agency" as defined by 15 U.S.C. § 1681a(f).

## FACTUAL ALLEGATIONS

20. In or around June 2017, Ms. Schultz purchased a home in San Tan Valley, Arizona (the "Arizona Home").

21. To purchase the Arizona Home, Ms. Schultz obtained a loan ("the Loan").

22. The Loan was secured by the Arizona Home.

23. As is relevant here, HomeBridge was subsequently retained to service the Loan.

24. In or around June 2020, to take advantage of lower interest rates, Ms. Schultz modified the Loan with JFQ Lending, Inc. ("JFQ").

25. Under the terms of the refinanced loan, the interest rate on the Loan was lowered, and Ms. Schultz's payment was decreased.

26. After the refinance was completed, JFQ assigned the loan to HomeBridge who acted as its servicer, effective August 1, 2020.

27. Under the terms of the loan, the first payment was due on August 1, 2020.

28. In August of 2020, Ms. Schultz went to HomeBridge's online portal and made her monthly payment in the amount of $1,254.77.

29. Thereafter, for reasons unknown, HomeBridge failed to process and document the payment.

30. Subsequently, HomeBridge contacted Ms. Schultz to advise that her August 2020 payment did not get processed and, thus, no payment had been received by HomeBridge.

31. In response, Ms. Schultz made a second $1,254.77 payment to HomeBridge.

32. Around this same time, Ms. Schultz listed the subject property for sale as she was in the process of moving to Texas.

33. By or around August 28, 2020, Plaintiff resided in Texas.

34. At this time, she stayed with family while attempting to purchase a home in Texas.

35. Accordingly, she notified HomeBridge of her new address in or around August 2020.

36. On or around August 26, 2020, Ms. Schultz was traveling to Texas in connection with her upcoming move.

37. While taking a break from driving, Ms. Schultz checked her bank account and discovered that despite its statement to the contrary, HomeBridge had processed both of the payments.

38. The first payment had processed on or before August 24, 2020.

39. The second payment processed on or before August 26, 2020.

40. On August 26, 2020, Ms. Schultz then contacted HomeBridge to discuss the billing error and requested HomeBridge reverse the second payment.

41. HomeBridge advised that it could not reverse the payment.

42. HomeBridge advised that it could only issue a check in the amount of the overpayment and it could take up to fifteen days.

43. Faced with the prospect of being deprived $1,254.77 she had not intended on spending for fifteen days due to HomeBridge's error and its inability to timely resolve the error, Ms. Schultz instead disputed one of the erroneous transactions with her bank as is her right under the Electronic Fund Transfers Act.

44. That same day, Ms. Schultz disputed the August 26, 2020 payment with her bank — USAA Federal Savings Bank ("USAA").

45. On September 2, 2020, USAA completed an investigation and advised that it had resolved the dispute in Ms. Schultz's favor.

46. Accordingly, USAA issued a credit in the amount of $1,254.77.

47. At this same time, without her knowledge, HomeBridge allegedly undertook to issue a refund check to Ms. Schultz for the overpayment.

48. Insofar as HomeBridge actually issued such check, Ms. Schultz never received it.

49. HomeBridge later asserted that a refund check had been sent, but no action had been taken to execute the check.

50. Accordingly, HomeBridge advised a stop payment would be placed on the alleged refund check.

51. On or around August 30, 2020, Ms. Schultz entered into a New Home Purchase Agreement with Meritage Homes of Texas, LLC ("Meritage").

52. As part of the New Home Purchase Agreement, Ms. Schultz agreed to purchase a new single-family home for her residence in Austin, Texas.

53. In connection with the purchase, Ms. Schultz provided a $5,000.00 earnest money deposit.

54. On or around September 14, 2020, Ms. Schultz entered into an agreement to sell the Arizona Home.

55. On September 14, 2020, Ms. Schultz made her September mortgage payment to HomeBridge, in the amount of $1,254.77.

56. Nevertheless, and unbeknownst to Ms. Shultz, HomeBridge reported her September 2020 mortgage payment as 30 days late on her credit reports.

57. Further, HomeBridge identified August 1, 2020 as the

58. In connection with the sale of the Arizona Home, On October 1, 2020, HomeBridge provided Ms. Schultz with a payoff statement providing a payoff amount of $225,973.90 to pay the loan in full on or before October 15, 2020.

59. Upon information and belief, the October 1, 2020 payoff overstated the balance of the mortgage by $1,254.77.

60. On or around October 7, 2020, Ms. Schultz closed on the sale of the Arizona Home.

61. On October 8, 2020, HomeBridge received the payoff amount of $225,973.90.

62. As of October 8, 2020, Ms. Schultz's mortgage on the Arizona Home was paid in full.

63. On October 9, 2020, HomeBridge sent a letter to Ms. Schultz's insurance carrier confirming the mortgage on the Arizona Home had been paid in full.

64. However, HomeBridge reported Ms. Schultz's October 2020 mortgage payment as 30 days late on her credit reports.

65. On October 13, 2020, Ms. Schultz received an email from MTH Mortgage conditionally approving her mortgage application for the purchase of a new home in Texas.

66. However, on November 3, 2020, in connection with the closing of the new loan, MTH Mortgage pulled a new copy of Ms. Schultz's credit reports and due to the recent late payments reported by HomeBridge, ultimately advised Ms. Schultz that her financing application was denied.

67. As a result, Ms. Schultz's home purchase contract was cancelled.

68. As a result of the contract cancellation, Ms. Schultz lost her $5,000 deposit.

69. Almost immediately after the sale was cancelled due to the inaccurate reporting, Ms. Schultz's realtor advised that the sellers increased the purchase price of the home by $31,000.00.

70. Due to the inaccurate reporting, Ms. Schultz could no longer go through with the purchase.

71. Instead, Ms. Schultz was forced to lease a residence for an additional year.

72. However, she was only able to lease a townhome with one less bedroom, without an office, with less dining area, and less square footage of living space.

73. And rather than building equity in a new home, Ms. Schultz's monthly payments merely go towards her rent.

74. On November 3, 2020, HomeBridge issued a check to Ms. Schultz for $1,254.77, presumably due to the overpayment received for the lost August 2020 payment.

75. Throughout October and November 2020, Ms. Schultz contacted HomeBridge seeking to have the error to her credit reports corrected.

76. Despite multiple conversations with various supervisors in various departments at HomeBridge, she was unable to remedy the inaccurate reporting.

77. On January 10, 2021, Ms. Schultz sent a detailed written dispute to Equifax, Experian and Trans Union, LLC, disputing HomeBridge's reporting of the Account.

78. Upon information and belief, Equifax provided HomeBridge with notice of Ms. Schultz's dispute, including a copy of her letter.

79. Upon information and belief, Experian provided HomeBridge with notice of Ms. Schultz's dispute, including a copy of her letter.

80. Upon information and belief, Trans Union provided HomeBridge with notice of Ms. Schultz's dispute, including a copy of her letter.

81. On February 8, 2021, Equifax responded to Ms. Schultz's dispute stating it had "updated" the reporting of the account.

82. However, HomeBridge continued to report to Equifax that Ms. Schultz's payment was 30-59 days past due.

83. On February 9, 2021, Trans Union responded to Ms. Schultz's dispute also stating it had "updated" the reporting of the account.

84. While HomeBridge updated the September 2020 payment to reflect that payment was timely, HomeBridge continued to report a 30-day delinquency in October 2020.

85. On February 10, 2021, Experian responded to Ms. Schultz's dispute also stating it had "updated" the reporting of the account.

86. While HomeBridge updated the September 2020 payment to reflect that payment was timely, HomeBridge updated its reporting to report a 30-day delinquency in October 2020.

87. Eventually, in March of 2021, Ms. Schultz was ultimately approved to purchase a different home in Dripping Springs, Texas.

88. As a result of the inaccurate reporting, Plaintiff received a higher interest rate on her mortgage.

89. As a result of the inaccurate reporting depriving her of purchasing her previous home and the resulting lapse of time before she could purchase another home, residential home prices had substantially increased, and Ms. Schultz was damaged as a result.

90. Ms. Schultz sent HomeBridge written correspondence dated May 28, 2021, requesting information regarding the Account and HomeBridge's mistakes in processing the August 2021 payment and subsequent October payoff.

91. The May 28, 2021 letter was a "qualified written request" as defined by 12 U.S.C. § 2605e(1)(B) of the Real Estate Settlement Procedures Act ("RESPA").

92. HomeBridge failed to provide a written response acknowledging receipt of Ms. Schultz's May 28, 2021 letter within five days of receipt as required under RESPA.

93. Upon information and belief, HomeBridge failed to conduct any investigation within 30 business days of receipt of Ms. Schultz's May 28, 2021 letter, as required under RESPA.

94. HomeBridge failed to, within 30 business days of receipt of Ms. Schultz's May 28, 2021 letter, provide Ms. Schultz with any written explanation or clarification, as required under RESPA.

95. After failing to receive any response, Ms. Schultz then sent HomeBridge an additional dispute letter on June 17, 2021, via certified mail, again requesting information regarding the Account and HomeBridge's mistakes in processing the August 2021 payment and subsequent October payoff.

96. The June 17, 2021 letter was a "qualified written request" as defined by 12 U.S.C. § 2605e(1)(B).

97. HomeBridge received Ms. Schulz's June 17, 2021 letter on June 21, 2021.

98. Again, HomeBridge failed to provide a written response acknowledging receipt of Ms. Schultz's June 17, 2021 letter within five days of receipt.

99. Again, HomeBridge failed to make appropriate corrections to the Account within 30 business days of receipt of Ms. Schultz's June 17, 2021 letter.

100. Again, HomeBridge failed to conduct an investigation within 30 business days of receipt of Ms. Schultz's June 17, 2021 letter.

101. Again, HomeBridge Cenlar failed to provide Ms. Schultz with any written explanation or clarification.

102. As a result of HomeBridge's actions and omissions, Ms. Schultz has been damaged both economically and emotionally.

103. She continues to have inaccurate credit reports and believes litigation is her only avenue to correct this negative information and ensure she does not incur additional damage.

### COUNT I
### VIOLATION OF 15 U.S.C. § 1681s-2(b)
### HomeBridge

104. Ms. Schultz repeats and re-alleges each factual allegation above.

105. HomeBridge violated 15 U.S.C. § 1681s-2(b) by failing to fully and properly investigate Ms. Schultz's disputes of the inaccurate credit information it was furnishing to the consumer reporting agencies.

106. HomeBridge failed to review all relevant information and failed to appropriately respond to each consumer reporting agency with the necessary removal of the inaccurate and derogatory late payment information.

107. As a result of HomeBridge's conduct as described herein, Ms. Schultz has suffered damages including, but not limited to, damage to her credit scores, out of pocket loss, loss of the ability to obtain and benefit from credit, time and expense disputing the incorrect reporting, and mental and emotional pain and anguish.

108. HomeBridge's conduct, actions, and/or inaction was willful, rendering it liable to Ms. Schultz for damages pursuant to 15 U.S.C. § 1681n.

109. In the alternative, HomeBridge's conduct, action(s), and/or inaction was negligent, entitling Ms. Schultz to recover damages under 15 U.S.C. § 1681o.

WHEREFORE, Ms. Schultz prays for relief and judgment, as follows:

a) Adjudging that HomeBridge's violated 15 U.S.C. § 1681s-2(b);

b) Awarding Ms. Schultz statutory or actual damages, pursuant to 15 U.S.C. §§ 1681n(a)(1)(A) and 1681o(a);

c) Awarding Ms. Schultz reasonable attorneys' fees and costs incurred in this action, pursuant to 15 U.S.C. §§ 1681n(a)(3) and 1681o(a);

d) Awarding Ms. Schultz punitive damages, pursuant to 15 U.S.C. § 1681n(a)(2);

e) Awarding such other and further relief as the Court may deem just and proper.

### COUNT II
### VIOLATION OF 12 U.S.C. § 2605
### HomeBridge

110. Ms. Schultz repeats and re-alleges each factual allegation above.

111. HomeBridge violated 12 U.S.C. § 2605, and its implementing regulations at 12 C.F.R. §1024, by:

    a. failing to notify the borrow of receipt of a qualified written request within 5 days;

    b. failing to make appropriate corrections in Plaintiff's Account;

    c. failing to conduct an investigation of the dispute at issue;

    d. failing to provide the borrower with a written explanation or clarification within 30 days of the borrowers' qualified written request(s).

112. As a result of HomeBridge's conduct as described herein, Ms. Schultz has suffered damages including, but not limited to, damage to her credit scores, out of pocket loss, loss of the ability to obtain and benefit from credit, time and expense disputing the incorrect reporting, and mental and emotional pain and anguish.

WHEREFORE, Ms. Schultz prays for relief and judgment, as follows:

    a) Adjudging that HomeBridge violated 12 U.S.C. § 2605;

    b) Awarding Ms. Schultz actual damages, pursuant to 12 U.S.C. § 2605(f)(1)(A);

    c) Awarding Ms. Schultz statutory damages, pursuant to 12 U.S.C. § 2605(f)(1)(B);

    d) Awarding Ms. Schultz reasonable attorneys' fees and costs incurred in this action, pursuant to 12 U.S.C. § 2605(f)(3); and

    e) Awarding such other and further relief as the Court may deem just and proper.

### COUNT III
### VIOLATION OF 15 U.S.C. § 1681i
### EXPERIAN

113. Ms. Schultz repeats and re-alleges each factual allegation above.

114. Experian violated 15 U.S.C. § 1681i by failing to correct inaccurate information in Ms. Schultz's credit file after receiving actual notice of such inaccuracies, by failing to

conduct a lawful reinvestigation, and by otherwise failing to comply with the procedures outlined in that section.

115. As a result of Experian's conduct as described herein, Ms. Schultz has suffered damages including, but not limited to, damage to her credit score, lout of pocket loss, loss of the ability to obtain and benefit from credit, time and expense disputing the incorrect reporting, and mental and emotional pain and anguish.

116. Experian's conduct, actions, and/or inaction was willful, rendering it liable to Ms. Schultz for damages pursuant to 15 U.S.C. § 1681n.

117. In the alternative, Experian's conduct, action(s), and/or inaction was negligent, entitling Ms. Schultz to recover damages under 15 U.S.C. § 1681o.

WHEREFORE, Ms. Schultz prays for relief and judgment, as follows:

a) Adjudging that Experian violated 15 U.S.C. § 1681i;

b) Awarding Ms. Schultz statutory or actual damages, pursuant to 15 U.S.C. §§ 1681n(a)(1)(A) and 1681o(a);

c) Awarding Ms. Schultz reasonable attorneys' fees and costs incurred in this action, pursuant to 15 U.S.C. § 1681n(a)(3) and 1681o(a);

d) Awarding Ms. Schultz punitive damages, pursuant to 15 U.S.C. § 1681n(a)(2);

e) Awarding such other and further relief as the Court may deem just and proper.

### COUNT IV
### VIOLATION OF 15 U.S.C. § 1681i
### EQUIFAX

118. Ms. Schultz repeats and re-alleges each factual allegation above.

119. Equifax violated 15 U.S.C. § 1681i by failing to correct inaccurate information in Ms. Schultz's credit file after receiving actual notice of such inaccuracies, by failing to conduct a

lawful reinvestigation, and by otherwise failing to comply with the procedures outlined in that section.

120. As a result of Equifax's conduct as described herein, Ms. Schultz has suffered damages including, but not limited to, loss of credit, out of pocket loss, loss of the ability to purchase and benefit from credit, time and expense disputing the incorrect reporting, humiliation and embarrassment of credit denials, and mental and emotional pain and anguish.

121. Equifax's conduct, actions, and/or inaction was willful, rendering it liable to Ms. Schultz for damages pursuant to 15 U.S.C. § 1681n.

122. In the alternative, Equifax's conduct, action(s), and/or inaction was negligent, entitling Ms. Schultz to recover damages under 15 U.S.C. § 1681o.

WHEREFORE, Ms. Schultz prays for relief and judgment, as follows:

a) Adjudging that Equifax violated 15 U.S.C. § 1681i;

b) Awarding Ms. Schultz statutory or actual damages, pursuant to 15 U.S.C. §§ 1681n(a)(1)(A) and 1681o(a);

c) Awarding Ms. Schultz reasonable attorneys' fees and costs incurred in this action, pursuant to 15 U.S.C. § 1681n(a)(3) and 1681o(a);

d) Awarding Ms. Schultz punitive damages, pursuant to 15 U.S.C. § 1681n(a)(2);

e) Awarding such other and further relief as the Court may deem just and proper.

## COUNT V
## VIOLATION OF 15 U.S.C. § 1681i
## TRANSUNION

123. Ms. Schultz repeats and re-alleges each factual allegation above.

124. Trans Union violated 15 U.S.C. § 1681i by failing to correct inaccurate information in Ms. Schultz's credit file after receiving actual notice of such inaccuracies, by

failing to conduct a lawful reinvestigation, and by otherwise failing to comply with the procedures outlined in that section.

125. As a result of Trans Union's conduct as described herein, Ms. Schultz has suffered damages including, but not limited to, loss of credit, out of pocket loss, loss of the ability to purchase and benefit from credit, time and expense disputing the incorrect reporting, humiliation and embarrassment of credit denials, and mental and emotional pain and anguish.

126. Trans Union's conduct, actions, and/or inaction was willful, rendering it liable to Ms. Schultz for damages pursuant to 15 U.S.C. § 1681n.

127. In the alternative, Trans Union's conduct, action(s), and/or inaction was negligent, entitling Ms. Schultz to recover damages under 15 U.S.C. § 1681o.

WHEREFORE, Ms. Schultz prays for relief and judgment, as follows:

a) Adjudging that Trans Union violated 15 U.S.C. § 1681i;

b) Awarding Ms. Schultz statutory or actual damages, pursuant to 15 U.S.C. §§ 1681n(a)(1)(A) and 1681o(a);

c) Awarding Ms. Schultz reasonable attorneys' fees and costs incurred in this action, pursuant to 15 U.S.C. § 1681n(a)(3) and 1681o(a);

d) Awarding Ms. Schultz punitive damages, pursuant to 15 U.S.C. § 1681n(a)(2); and

e) Awarding such other and further relief as the Court may deem just and proper.

### TRIAL BY JURY

128. Ms. Schultz is entitled to and hereby demands a trial by jury.

Dated: September 23, 2021

Respectfully submitted,

/s/ Russell S. Thompson IV
Russell S. Thompson IV
Thompson Consumer Law Group, PC
11445 E Via Linda, Ste 2 #492
Scottsdale, AZ 85259
Telephone: 602-388-8898
Facsimile: 866-317-2674
rthompson@ThompsonConsumerLaw.com

Attorneys for Plaintiff